1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                 **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   JOHN KEOVILLAYPHONE,                    No. CIV S-07-0481-FCD-CMK-P

12                    Petitioner,

13          vs.                              <u>FINDINGS AND RECOMMENDATIONS</u>

14   WARDEN OF NORTH KERN
     STATE PRISON, et al.,

15
                     Respondents.
16
     _____/
17

18          Petitioner, a state prisoner proceeding with retained counsel, brings this petition

19   for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pending before the court are

20   petitioner's petition for a writ of habeas corpus (Docs. 1 and 2), and respondent's answer (Doc.

21   12).  Petitioner has not filed any memorandum of points and authorities in support of his petition

22   and did not file a reply brief.

23   / / /

24   / / /

25   / / /

26   / / /

                                              1

# I. BACKGROUND

A.   **Facts**[1]

The state court recited the following facts, and petitioner has not offered any clear and convincing evidence to rebut the presumption that these facts are correct:

> Nkau X. (Nkau) and the victim T. live in Oroville and are high school age cousins.  On March 14, 2003, Nkau and her friend, Ker, invited T., who was then 15 years old, to a birthday party in Marysville.  The two girls traveled there with Ker and his friend Meng.  The birthday party was being held for Meng's brother, Mong, in a detached garage at their residence.  A third brother, Keng, was also there.
>
> The cousins arrived at the party around 6:00 p.m..  There were about 10 to 15 people in attendance.  At some point, defendant, a friend of Meng's who was nicknamed "Blacky," arrived.  Defendant is Laotian, and had darker skin than the other partygoers, who were all Hmong.  He also stood out on account of his large size.
>
> During the party, T. asked defendant what time it was because she noticed that he was the only one there wearing a watch.
>
> Beer and hard liquor were served at the party.  T. did not want to drink alcohol, but was told that she would not be taken home unless she did.  She drank about two "pretty big" cups half-filled with hard liquor.  Everyone at the party was inside the garage except Mong and Nkau.  T. felt sick and began throwing up, at which point several males, including defendant and Meng, grabbed her from behind.  Someone turned off one of the lights while Meng and defendant tried to insert their fingers in her vagina.  Defendant put his finger inside her vagina, ignoring her pleas for him to stop.  T. knew it was defendant because she "could feel his watch against [her] skin."  He removed his hand from her pants when she vomited again.
>
> T. found her way outside and told Nkau what had happened, but Nkau thought she was joking and wandered off.  While T. was outside by the refrigerator talking to Ker, defendant kept coming over to them.  Defendant said he wanted to rape T. and asked Ker to "[l]et me just have her for ten minutes."  Ker initially told defendant "no," but they began whispering to each other for a minute or two.
>
> Suddenly, Keng and Ker grabbed T. by the arms and legs.  With defendant leading the way, they physically carried her to another location in the back of the property near some trees.  T. was placed in a shed, on a flat surface with no lighting.  Ker and Keng held T. down, Ker covered her mouth to stifle her screams, and defendant began removing her pants.  Defendant put his fingers in her vagina; he then held T.'s legs down and

---

[1]      Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct."  Petitioner bears the burden of rebutting this presumption by clear and convincing evidence.  See id.  These facts are, therefore, drawn from the state court's opinion(s), lodged in this court.  Petitioner may also be referred to as "defendant."

inserted his penis in her vagina.  Meng heard screams coming from the shed and the attack ended when he arrived, told the assailants to stop and announced he was taking T. home.  The entire ordeal had lasted about 30 minutes.

As they were preparing to leave, T., who was crying and upset, told Nkau that "Blacky" had raped her.  Nkau went over to defendant, who was sitting in a car, and called him a "bitch" because he had no right to do that to her cousin.  Defendant asked Nkau what she had called him.  When she repeated the epithet, he got out of the car and struck her above the left eye with his fist.

T. rode back to Oroville with defendant, Meng, Mong and Ker.  When she arrived at Nkau's house, she reported the rape to her friend, Cindy, and they called the police and T. was taken to the hospital.  The investigating police officer noticed that T. had bruising and reddish marks on her wrists, armpits and upper body.  David Damazo, the doctor who examined T. that night, observed that she had been through a "traumatic ordeal."  It looked to him as though T. had "clamped [her] legs very tightly together trying to prevent what was happening."  There were two lacerations of the skin of the vagina and the tissue was red, raw, and abraded.  Her condition was inconsistent with consensual intercourse, and Dr. Damazo indicated it was in fact "among the worst [he had] seen as far as the amount of vaginal injury during a sexual assault exam."

Defendant did not testify.  Other witnesses who attended the party, some of whom testified under grants of use immunity, presented varying and somewhat conflicting accounts of the events of that evening.

## B.   Procedural History

Petitioner was convicted of forcible rape in concert, forcible sexual penetration in concert, misdemeanor assault, and forcible sexual penetration.  The jury also found true that, as to the first two counts, petitioner kidnaped the victim, substantially increasing her risk of harm.  Petitioner was sentenced to 25 years to life in state prison, plus consecutive terms totaling 17 years.  The California Court of Appeal affirmed the conviction and sentence in a published decision issued on August 31, 2005.  See People v. Keovillayphone, 132 Cal.App.4th 491 (3rd Dist. 2005).  The California Supreme Court denied direct review without comment or citation on December 14, 2005.  Petitioner did not file any state post-conviction actions and respondents concede the claims raised in the instant federal petition are exhausted.

/ / /

/ / /

/ / /

3

## II.  STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable.  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998).  The AEDPA does not, however, apply in all circumstances.  When it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo.  See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner).  When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist."  Pirtle, 313 F. 3d at 1167.

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F. 3d 1223, 1229 (9th Cir. 2001).  Thus,

1    under § 2254(d), federal habeas relief is available where the state court's decision is "contrary to"

2    or represents an "unreasonable application of" clearly established law.  Under both standards,

3    "clearly established law" means only those holdings of the United States Supreme Court as of the

4    time of the relevant state court decision.  See Carey v. Musladin, 127 S.Ct. 649, 653-54 (2006).

5    "What matters are the holdings of the Supreme Court, not the holdings of lower federal courts."

6    Plumlee v. Masto, 512 F.3d 1204 (9th Cir. Jan. 17, 2008) (en banc).

7           In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a

8    majority of the Court), the United States Supreme Court explained these different standards.  A

9    state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by

10    the Supreme Court on the same question of law, or if the state court decides the case differently

11    than the Supreme Court has on a set of materially indistinguishable facts.  See id. at 405.  A state

12    court decision is also "contrary to" established law if it applies a rule which contradicts the

13    governing law set forth in Supreme Court cases.  See id.  In sum, the petitioner must demonstrate

14    that Supreme Court precedent requires a contrary outcome because the state court applied the

15    wrong legal rules.  Thus, a state court decision applying the correct legal rule from Supreme

16    Court cases to the facts of a particular case is not reviewed under the "contrary to" standard.  See

17    id. at 406.  If a state court decision is "contrary to" clearly established law, it is reviewed to

18    determine first whether it resulted in constitutional error.  See Benn v. Lambert, 293 F.3d 1040,

19    1052 n.6 (9th Cir. 2002).  If so, the next question is whether such error was structural, in which

20    case federal habeas relief is warranted.  See id.  If the error was not structural, the final question

21    is whether the error had a substantial and injurious effect on the verdict, or was harmless.  See id.

22           State court decisions are reviewed under the far more deferential "unreasonable

23    application of" standard where it identifies the correct legal rule from Supreme Court cases, but

24    unreasonably applies the rule to the facts of a particular case.  See id.; see also Wiggins v. Smith,

25    123 S.Ct. 252 (2003).  While declining to rule on the issue, the Supreme Court in Williams,

26    suggested that federal habeas relief may be available under this standard where the state court

1   either unreasonably extends a legal principle to a new context where it should not apply, or

2   unreasonably refuses to extend that principle to a new context where it should apply.  See

3   Williams, 529 U.S. at 408-09.  The Supreme Court has, however, made it clear that a state court

4   decision is not an "unreasonable application of" controlling law simply because it is an erroneous

5   or incorrect application of federal law.  See id. at 410; see also Lockyer v. Andrade, 123 S.Ct.

6   1166, 1175 (2003).  An "unreasonable application of" controlling law cannot necessarily be

7   found even where the federal habeas court concludes that the state court decision is clearly

8   erroneous.  See Lockyer, 123 S.Ct. at 1175.  This is because ". . . the gloss of clear error fails to

9   give proper deference to state courts by conflating error (even clear error) with

10  unreasonableness."  Id.  As with state court decisions which are "contrary to" established federal

11  law, where a state court decision is an "unreasonable application of" controlling law, federal

12  habeas relief is nonetheless unavailable if the error was non-structural and harmless.  See Benn,

13  283 F.3d at 1052 n.6.

14          The "unreasonable application of" standard also applies where the state court

15  denies a claim without providing any reasoning whatsoever.  See Himes v. Thompson, 336 F.3d

16  848, 853 (9th Cir. 2003); Delgado v. Lewis, 233 F.3d 976, 982 (9th Cir. 2000).   Such decisions

17  are considered adjudications on the merits and are, therefore, entitled to deference under the

18  AEDPA.  See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 233 F.3d at 982.

19  The federal habeas court assumes that state court applied the correct law and analyzes whether

20  the state court's summary denial was based on an objectively unreasonable application of that

21  law.  See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

### III.  DISCUSSION

Petitioner raises five substantive claims and one claim of cumulative error.  The substantive claims are:  (1) the trial court failed to provide sufficient guidance in response to a jury inquiry about the definition of rape; (2) the trial court erred in instructing the jury that rape in concert was a general intent crime; (3) the trial court erred by refusing to give a requested jury instruction on the lesser included offense of attempted rape; (4) the trial court erred in refusing to instruct the jury that absence of flight immediately after the crime could be considered evidence of innocence; and (5) the trial court committed sentencing error under Apprendi v. New Jersey, 530 U.S. 466 (2000), and Blakely v. Washington, 542 U.S. 296 (2004), by enhancing the sentence based on facts not submitted to the jury and proved beyond a reasonable doubt.  Petitioner also claims the cumulative effect of these errors warrants federal habeas relief.

#### A.    Jury Instruction Claims

Petitioner raises three claims of error relating to jury instructions.  A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of a transgression of federal law binding on the state courts.  See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  It is not available for alleged error in the interpretation or application of state law.  See Middleton, 768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986).  Habeas corpus cannot be utilized to try state issues de novo.  See Milton v. Wainwright, 407 U.S. 371, 377 (1972).  Thus, a challenge to jury instructions does not generally give rise to a federal constitutional claim.  See Middleton, 768 F.2d at 1085) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).

However, a "claim of error based upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so infects the entire trial that the resulting conviction violates the defendant's right to due process." Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th

1  Cir. 1980)); see also Lisenba v. California, 314 U.S. 219, 236 (1941).  In order to raise such a

2  claim in a federal habeas corpus petition, the "error alleged must have resulted in a complete

3  miscarriage of justice."  Hill v. United States, 368 U.S. 424, 428 (1962); Crisafi v. Oliver, 396

4  F.2d 293, 294-95 (9th Cir. 1968); Chavez v. Dickson, 280 F.2d 727, 736 (9th Cir. 1960).

5          In general, to warrant federal habeas relief, a challenged jury instruction "cannot

6  be merely 'undesirable, erroneous, or even "universally condemned,"' but must violate some due

7  process right guaranteed by the fourteenth amendment."  Prantil v. California, 843 F.2d 314, 317

8  (9th Cir. 1988) (quoting Cupp v. Naughten, 414 U.S. 141, 146 (1973)).  To prevail, petitioner

9  must demonstrate that an erroneous instruction "'so infected the entire trial that the resulting

10  conviction violates due process.'"  Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp,

11  414 U.S. at 147).  In making its determination, this court must evaluate an allegedly ambiguous

12  jury instruction "'in the context of the overall charge to the jury as a component of the entire trial

13  process.'"  Prantil, 843 F.2d at 817 (quoting Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir.

14  1984)).  Further, in reviewing an allegedly ambiguous instruction, the court "must inquire

15  'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a

16  way' that violates the Constitution."  Estelle, 502 U.S. at 72 (quoting Boyde v. California, 494

17  U.S. 370, 380 (1990)).  Petitioner's burden is "especially heavy" when the court fails to give an

18  instruction.  Henderson v. Kibbe, 431 U.S. 145, 155 (1977).  Where an instruction is missing a

19  necessary element completely, the "reasonable likelihood" standard does not apply and the court

20  may not ". . . assume that the jurors inferred the missing element from their general experience or

21  from other instructions. . . ."  See Wade v. Calderon, 29 F.3d 1312, 1321 (9th Cir. 1994).  In the

22  case of an instruction which omits a necessary element, constitutional error has occurred.  See id.

23          It is well-established that the burden is on the prosecution to prove each and every

24  element of the crime charged beyond a reasonable doubt.  See In re Winship, 397 U.S. 358, 364

25  (1970).  Therefore, due process is violated by jury instructions which use mandatory

26  presumptions to relieve the prosecution's burden of proof on any element of the crime charged.

8

1   See Francis v. Franklin, 471 U.S. 307, 314 (1985); see also Sandstrom v. Montana, 442 U.S. 510

2   (1979).  A mandatory presumption is one that instructs the jury that it must infer the presumed

3   fact if certain predicate facts are proved.  See Francis, 471 U.S. at 314.  On the other hand, a

4   permissive presumption allows, but does not require, the trier of fact to infer an elemental fact

5   from proof of a basic fact.  See County Court of Ulster County v. Allen, 442 U.S. 140, 157

6   (1979).  The ultimate test of the constitutionality of any presumption remains constant –  the

7   instruction must not undermine the factfinder's responsibility at trial, based on evidence adduced

8   by the government, to find the ultimate facts beyond a reasonable doubt.  See id. at 156 (citing In

9   re Winship, 397 U.S. at 364).  Finally, even if constitutional error is found, habeas relief is not

10  warranted if the error was harmless.  See Ho v. Carey, 332 F.3d 587, 592 (9th Cir. 2003).

11          1.      Instruction Concerning Rape In Concert

12          Petitioner's argument, in its entirety, is as follows:  "Rape in concert requires

13  specific intent under California law but the instruction given informed the jury that only general

14  intent was required."  As to this claim, the California Court of Appeal stated:

15                  As defendant concedes, [under California law] rape . . . is a general
                    intent crime.  (citation omitted).  However, defendant was charged with
16                  the more serious crime of rape in concert. (citation omitted).  [¶]
                    Defendant complains that the court misinstructed the jury by telling them
17                  that the crime of rape in concert required only general intent.

18  The court then added a footnote outlining the instruction given by the trial court:

19                  As pertinent here, the court told the jury:  "In the crime[] rape in
                    concert, . . . there must exist a union or joint operation of act or conduct
20                  and general criminal intent.  [¶] General criminal intent does not require an
                    intent to violate the law.  When a person intentionally does that which the
21                  law declares to be a crime, he is acting with general criminal intent even
                    though he may not know that his act or conduct is unlawful."
22

23  The court continued its analysis of petitioner's claim as follows:

24                  . . . He maintains that, because the offense required that defendant
                    commit rape "voluntarily" while acting in concert with others, the intent
25                  required is a "very similar type of specific intent to that required for aiding
                    and abetting" and thus rape in concert is a specific intent crime.
26

There are two kinds of criminal intent:  general intent and specific intent.  "'When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act.  This intention is deemed to be a general criminal intent.  When the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent.'  (People v. Hood (1969) 1 Cal.3d 444, 456-457).  General criminal intent thus requires no further mental state beyond willing commission of the act proscribed by law."  (citation omitted).

In order to be found guilty of the crime of rape in concert, a defendant must "voluntarily act in concert with another person," commit the crime of rape "by force or violence and against the will of the victim." ([California Penal Code] § 264.1).  He may do so "either personally or by aiding and abetting the other person."  (Ibid).

The word "voluntarily" in section 264.1 means that the defendant acted freely of his own volition, and not accidentally, unintentionally, or out of fear or coercion.  (citation omitted).  This mental state typifies general intent crimes.  (citations omitted).

It follows that as long as the defendant acts (1) voluntarily and (2) in concert with others in committing an act of sexual intercourse against the victim's will by using force or violence, the elements of section 264.1 have been satisfied.  It is not necessary that he intend to do any further act or achieve any additional consequence.  Rape in concert is, therefore, a general intent crime.

The court rejected petitioner's argument that reversal was warranted because rape in concert may be achieved by aiding and abetting, which requires specific intent, because petitioner was charged and convicted under the theory that he was the rapist, not that he aided and abetted another to commit rape.

Resolution of this claim is very simple.  Under California law, as described by the state court and which petitioner does not challenge, rape in concert is a general intent crime.  As respondents observe, this court is bound by the state court's interpretation of state law.  See Estelle, 502 U.S. at 67-68.   Federal habeas corpus relief is not available for alleged error in the interpretation or application of state law, see Middleton, 768 F.2d at 1085, and cannot be utilized to try state issues de novo, see Milton, 407 U.S. at 377.  Because the trial court correctly instructed the jury on the intent element required for rape in concert, there was no instructional error which could have risen to the level of a due process violation.  Therefore, the state court's determination was neither contrary to nor an unreasonable application of clearly established law.

2.      Lesser Included Offense Instruction

Petitioner next argues:

> There was evidence to question whether penetration had occurred as required by California law defining rape. The defense asked the court to instruct on attempted rape, a lesser included offense and the request was denied. The jury later asked a question about how penetration could be proved, indicating that this was an issue upon which they had questions about the proof of that element.

Resolution of this claim is also simple. Under Beck v. Alabama, 447 U.S. 625, 638 (1980), it is well-settled that, in capital cases, failure to give a lesser included offense instruction where the evidence supports the instruction results in constitutional error. However, there is no such settled rule for non-capital cases. See Turner v. Marshall, 63 F.3d 807, 819 (9th Cir. 1995), overruled on other ground by Tolbert v. Page, 182 F.3d 677 (9th Cir. 1999). As the court in Turner observed, there is a circuit split on the question. See id. In the Ninth Circuit, the Beck rule does not apply in capital cases. See Bashor v. Risley, 730 F.2d 1288, 1240 (9th Cir. 1984). The Eleventh and Tenth Circuits agree. See Perry v. Smith, 810 F.2d 1078, 1080 (11th Cir. 1987); Trujillo v. Sullivan, 815 F.2d 597, 602 (10th Cir. 1987). The Seventh and First Circuits only apply Beck in non-capital cases to prevent a fundamental miscarriage of justice. See Tata v. Carver, 917 F.2d 670, 672 (1st Cir. 1990); Nichols v. Gagnon, 710 F.2d 1267, 1272 (7th Cir. 1983). The Third and Sixth Circuits, however, generally apply Beck in all non-capital cases. See Vujosevic v. Rafferty, 844 F.2d 1023, 1027 (3rd Cir. 1988); Ferrazza v. Mintzes, 753 F.2d 967, 968 (6th Cir. 1984). The Supreme Court has not addressed the applicability of Beck in non-capital cases. Because there is no clearly established Supreme Court precedent applying the Beck lesser included offense rule in non-capital cases, and because creating such a rule in this case would violate the non-retroactivity principles of Teague v. Lane, 489 U.S. 288 (1989), federal habeas relief is not available on this claim. See Turner, 182 F.3d at 819.

/ / /

/ / /

1                3.      Absence of Flight Instruction

2          Petitioner argues:

3                Defense counsel requested that the court instruct the jury that it
could consider petitioner's post-offense conduct in staying with the victim
4          and not fleeing as evidence that he had no consciousness of guilt.  This
was refused as inappropriate although there was evidence to support it and
5          it is a correct statement of law in California.

6     The record reflects that petitioner requested an instruction under CALJIC No. 2.52 as follows:

7                The [flight] . . . of a person [immediately] after the commission of
a crime, or after [he] . . . is accused of a crime, is not sufficient in itself to
8          establish [his] . . . guilt, but it is a fact which, if proven, may be considered
by you in light of all other proven facts in deciding whether a defendant is
9          guilty or not guilty.

10    As to this claim, the Court of Appeal stated:

11               The California Supreme Court . . . decisively rejected the same
argument defendant tenders here.  We quote: "Pointing to Penal Code
12         section 1127c, which requires an instruction on flight, when supported by
the record, as showing consciousness of guilt, [the defendant] argues that
13         he has a 'reciprocal' right to an instruction on absence of flight, as
showing lack of guilt.  [¶] We discern no error.  In . . . [People v.] Green
14         [27 Cal.3d 1, 37 (1980)] . . . we held that refusal of an instruction on
absence of flight was proper and was not unfair in light of Penal Code
15         section 1127c.  We observed that such an instruction would invite
speculation; there are plausible reasons why a guilty person might refrain
16         from flight. . . .  Our conclusion therein also forecloses any federal or state
constitutional challenge based on due process."  (citation omitted).

17

18    The Court of Appeal concluded that it was bound by the California Supreme Court's rejection of

19    the same claim.

20                The court agrees with respondents that: (1) there is no Supreme Court case which

21    concludes that a reciprocal absence of flight instruction must be given; and (2) even if there were,

22    any error was harmless because the jury was nonetheless able to consider that his lack of flight

23    suggested innocence.  As to the latter point, nothing in the record indicates that, even though an

24    absence of flight instruction was refused, the jury was not able to consider absence of flight as

25    indicative of petitioner's innocence.  The jury was aware that petitioner left with the victim in the

26    same car and petitioner's trial counsel argued to the jury that absence of flight indicated

1   innocence.  This court cannot say that the state court's determination of this claim was either

2   contrary to or an unreasonable application of any clearly established Supreme Court precedent

3   regarding absence of flight instructions or harmless error.

4   **B.   Response to Jury Inquiry**

5   Petitioner's argument, in its entirety, is as follows:

6   During deliberations the jury asked a question whether rape could be accomplished only by penetration by a penis or if it could convict based
7   on penetration by another object.  The court reread an instruction defining rape as sexual intercourse without responding specifically to the jury's
8   question, and stating that it would not define intercourse any further.

9   The Court of Appeal stated:

10  Defendant argues that Judge Curry committed reversible error by not answering affirmatively when the jurors asked if a penis had to be used
11  to commit rape.

12  * * *

13  Judge Curry did not abuse his discretion under section 1138 by rereading instructions which explained that rape constituted an act of
14  "sexual intercourse" against the will of the victim.  It is settled that "'when terms have no technical meaning peculiar to the law, but are commonly
15  understood by those familiar with the English language, instructions as to their meaning are not required.'" (citations omitted).  "Sexual intercourse"
16  is universally understood by adults as requiring the insertion of a penis into a vagina.  Thus, by reading the relevant excerpt from the rape
17  instruction, the trial court effectively answered the jury's question.

18  As respondents note, the Supreme Court addressed whether trial courts must

19  clarify jury instructions in <u>Weeks v. Angelone</u>, 528 U.S. 225 (2000).  As long as the jury

20  instruction properly states the law, it need not be clarified.  <u>See id.</u> at 234.  Furthermore, the court

21  agrees with the Court of Appeal that there is no reasonable likelihood that the jury misunderstood

22  what was required to prove rape because the meaning of "sexual intercourse" is universally

23  understood.  Thus, the trial court's refusal to offer any further instructions did not relieve the

24  prosecution of the burden of proof on the necessary penetration element of rape.  For these

25  reasons, the court concludes that the state court's determination of this claim was neither contrary

26  to nor an unreasonable application of clearly established law.

13

**C.    Sentencing Error Claim**

Citing <u>Cunningham v. California</u>, 127 S.Ct. 856 (2007), petitioner argues:

> The court followed the sentencing scheme which has been declared unconstitutional by <u>Cunningham</u> by imposing upper terms in count 2 for factors related to the crime that were not presented to the jury or found true beyond a reasonable doubt and on count 6 on factors related to petitioner's prior performance.  None of these facts was presented to the jury or found true by them beyond a reasonable doubt.

The state court addressed this claim as follows:

> The trial court imposed the upper term sentence for count II (sexual penetration in concert), citing the facts that defendant caused great bodily injury, the crime involved a high degree of cruelty and callousness, and defendant induced others to commit the crime.  The court also imposed the upper term for count VI, sexual penetration with a foreign object, citing defendant's prior juvenile criminal record and his poor performance on probation. . . .
>
> * * *
>
> Applying the Sixth Amendment to the United States Constitution, the federal high court held in <u>Apprendi</u> that other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be tried to a jury and proved beyond a reasonable doubt.  (citation to <u>Apprendi</u> omitted).  Fort his purpose, the statutory maximum is the maximum sentence that a court could impose based solely on facts reflected by a jury's verdict or admitted by the defendant.  Thus, when a sentencing court's authority to impose an enhanced sentence depends upon additional factfinding, there is a right to a jury trial and proof beyond a reasonable doubt on the additional facts.  (citation to <u>Blakely</u> omitted).
>
> * * *
>
> In <u>People v. Black</u> (2005) 35 Cal.4th 1238, our state Supreme Court addressed the validity of upper term and consecutive sentences imposed without predicate factfinding by a jury, in light of these recent United States Supreme Court authorities.  The court has ruled that "the judicial factfinding that occurs when a judge exercises discretion to impose an upper term sentence or consecutive terms under California law" does "not violate a defendant's right to a jury trial under the principles set forth in <u>Apprendi</u> [and <u>Blakely</u>]. . . ." (citation to <u>Black</u> omitted).  We reject defendant's sentencing claims based on the reasoning in <u>Black</u>.

///

///

14

1      Petitioner was sentenced under California's determinate sentencing law ("DSL"),

2   which provides for low term, middle term, and upper term sentences, depending on the facts.

3   This sentencing scheme was addressed by the Supreme Court in Cunningham, which was

4   decided in 2007 – after the California Supreme Court decided Black and after petitioner's

5   conviction became final.  In Cunningham, the Supreme Court concluded that the DSL is

6   unconstitutional because aggravating facts which would subject a defendant to the upper term of

7   the three possible terms are found by a judge by a preponderance of the evidence.  See

8   Cunningham, 127 S.Ct. at 871.  The Court held that, under the DSL, the middle term is the

9   relevant statutory maximum for purposes of analysis under Apprendi and Blakely.  See id.

10  Cunningham effectively overruled Black.

11      Because petitioner's conviction became final before Cunningham was decided,

12  the first question is whether Cunningham applies retroactively in this case.  The court concludes

13  that it does not.  Cunningham is based on the rule announced in Apprendi.  See Fennen v.

14  Nakayema, 494 F. Supp. 2d 1148, 1155-56 (E.D. Cal., June 14, 2007).   The Ninth Circuit has

15  held that Apprendi does not apply retroactively on collateral review.  See United States v

16  Sanchez-Cervantes, 282 F.3d 664, 666-67 (9th Cir. 2002).   Similarly, the Ninth Circuit has held

17  that  Blakely, which is also based on Apprendi, does not apply retroactively.  See Schardt v.

18  Payne, 414 F.3d 1025, 1027 (9th Cir. 2005).  Therefore, Cunningham, which is even farther

19  removed from Apprendi than Blakely, cannot apply retroactively to review of convictions which

20  became final before Cunningham was decided.  See Fennen, 494 F. Supp. 2d at 1155-56; see also

21  Rosales v. Hotel, 2007 WL 1852186 (S.D. Cal., June 26, 2007), Salerno v. Schriro, 2007 WL

22  2153584 (D. Ariz., July 24, 2007).

23      Because Cunningham does not apply retroactively in this case, the next question is

24  whether, under Apprendi and Blakely, as understood by the California courts at the time

25  petitioner's case was decided, any sentencing error occurred.  As the state court indicated, when

26  it decided petitioner's case it understood that the DSL was not unconstitutional in light of the

1  California Supreme Court's decision in <u>Black</u>, and there was no clearly established United States

2  Supreme Court precedent to the contrary.  Again, <u>Cunningham</u> came later and, therefore, could

3  not have instructed the Court of Appeal's analysis in this case.  Moreover, because the DSL

4  provides by statute for an upper term, it was not unreasonable for the state court to rely on <u>Black</u>

5  to conclude that no Sixth Amendment violation had occurred in this case given that no fact not

6  found by the jury subjected petitioner to a sentence beyond the maximum upper term provided in

7  the DSL.  Of course, the United States Supreme Court in <u>Cunningham</u> subsequently indicated

8  that this analysis was not correct when it concluded that the middle term, not the upper term, is

9  the relevant statutory maximum.  But, this court cannot say that, at the time petitioner's case was

10  decided, the state court's determination was either contrary to or an unreasonable application of

11  then-existing Supreme Court precedent.  <u>See</u> <u>Rosales</u>, 2007 WL 1852186 at *7.

12         **D.**    <u>**Cumulative Error Claim**</u>

13         For all the reasons discussed above, there are no errors which could have had an

14  unconstitutional cumulative effect. Therefore, the state court's denial of petitioner's cumulative

15  effect claim was neither contrary to nor an unreasonable application of any clearly established

16  law.

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

1

### IV.  CONCLUSION

2          Based on the foregoing, the undersigned recommends that:

3          1.       Petitioner's petition for a writ of habeas corpus (Docs. 1 and 2) be denied;

4          2.       The Clerk of the Court be directed to enter judgment and close this file.

5          These findings and recommendations are submitted to the United States District

6   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days

7   after being served with these findings and recommendations, any party may file written

8   objections with the court.  The document should be captioned "Objections to Magistrate Judge's

9   Findings and Recommendations."  Failure to file objections within the specified time may waive

10  the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

11

12  DATED: March 26, 2008

13

14                                                          _____
                                                            **CRAIG M. KELLISON**
15                                                          UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26